# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROLAND CUTRER, JR.,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO. 20-2919** |
| | |
| **STATE FARM MUTUAL AUTOMOBILE** | **SECTION: "E"** |
| **INSURANCE COMPANY,** | |
| **Defendant** | |

## ORDER AND REASONS

Before the Court is a Motion to Remand filed by Plaintiff Roland Cutrer, Jr.[1] Defendant State Farm Mutual Automobile Insurance Company opposes this motion.[2] For the reasons that follow, Plaintiff's Motion to Remand is **GRANTED**.

## BACKGROUND

As set forth in Plaintiff's petition, on January 24, 2018, a vehicle owned by Christopher Beegle and operated by Jenna Knoblach struck the left rear quarter panel of a vehicle owned and operated by Plaintiff.[3] Plaintiff suffered injuries as a result of the accident.[4] On January 8, 2020, Plaintiff brought this action against Defendant, in its capacity as his alleged uninsured/underinsured motorist carrier, in the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana.[5] According to Plaintiff's petition, Plaintiff seeks to recover for his medical expenses, pain and suffering, mental anguish, inconvenience and aggravation, expert fees, penalties and attorneys' fees, plus interest.[6] Plaintiff did not request a jury and did not state whether the amount in

---

[1] R. Doc. 12.
[2] R. Doc. 14.
[3] R. Doc. 1-2.
[4] *Id.*
[5] *Id.*
[6] *Id.*

controversy exceeded $75,000.[7] State Farm was served with Plaintiff's petition on January 28, 2020.[8] State Farm removed this action to federal court on October 26, 2020 based on diversity jurisdiction.[9]

Plaintiff moves to remand because State Farm's removal was filed more than thirty days after State Farm ascertained the case was removable based on the amount in controversy. According to the Plaintiff, State Farm had the following knowledge prior to the time suit was filed in state court:

On January 29, 2019, plaintiff provided defendant with his medical records and medical bills totaling $46,577.65. **Exhibit C** (for brevity, only portions of the medical records are attached, evidencing that plaintiff had undergone numerous injections and several ESIs). Included in the records provided to State Farm was Mr. Cutrer's MRI of his lumbar spine taken on March 5, 2018, which revealed disk herniations/prolapses at L3-4, L4-5 and L5-S1. **Exhibit D.** Mr. Cutrer had no prior injuries or problems with his lower back before the January 24, 2018 accident. In his letter dated January 29, 2019, plaintiff requested a tender in good faith of at least $125,000.00, stating that he believed **his damages exceed his limits of $250,000.00. Exhibit A.**

On March 6, 2019, State Farm replied that it would like to offer $71,577.65 to resolve plaintiff's UM claim. **Exhibit E.** On March 11, 2019, plaintiff responded that *he is still treating for his back* and thus, **not in a position to resolve the matter at this time for less than policy limits.** Plaintiff also requested an unconditional tender of the undisputed amount. **Exhibit F.** State Farm then made an UM tender, but only for $71,577.65. **Exhibit G.**

On November 1, 2019, plaintiff provided State Farm UM with additional medical records revealing left radiofrequency ablation and ESIs undergone since the March 11, 2019 tender. **Exhibit H.**

---

[7] *Id.*
[8] R. Doc. 6-1 at 1.
[9] R. Doc. 1.

Additional medical bills totaling $8,761.00 were also provided. **Exhibit I**. On November 25, 2019, State Farm issued a second UM tender in the amount of $10,000.00. **Exhibit J.**

On December 11, 2019, plaintiff sent a letter to State Farm **stating that the tender was woefully inadequate and barely covers the cost of treatment for the past year, much less any monies for pain and suffering. Exhibit K.** On January 8, 2020, plaintiff proceeded to file suit against State Farm as his UM carrier.

On January 10, 2020, plaintiff provided State Farm with additional medical records evidencing a left lumbar radiofrequency ablation and right radiofrequency ablation. Plaintiff also provided additional medical bills totaling $4,292.00. Plaintiff **again requested State Farm to tender the remaining of the policy limits of $250,000.00. Exhibit L.** On January 28, 2020, State Farm UM issued a third UM tender in the amount of $10,000.00. **Exhibit M.**

On March 19, 2020, plaintiff provided defendant with updated medical records of additional ESIs and radial frequency ablation, and **additional medical bills totaling $58,611.63**. **Exhibit N.** Again, plaintiff **requested the remainder of the policy limits of $250,000.00, as plaintiff continues to treat**.

As of March 19, 2020, plaintiff had provided defendant with **$118,242.28** in medical bills, along with the records, related to the accident sued upon. However, defendant had only tendered a total of $91,577.65 under the UM policy and $5,000.00 under med pay, for a total of $96,577.65. That is ***$21,664.63 less than the bills submitted*** and ***does not include anything for pain and suffering and future medical cost***. It was crystal clear at this time that the amount in controversy was over $75,000.00. When you subtract the outstanding bills of $21,664.63 from $75,000.00, that leaves only $53,335.37, which is obviously not enough to compensate plaintiff for his pain, suffering and future medical expenses, when his current medical bills are over $100,000.00.[10]

---

[10] R. Doc. 12-1 at 2-5. References are to exhibits attached to R. Doc. 12.

All of the information described above was provided to State Farm before the Plaintiff filed suit in state court on January 8, 2020.

Plaintiff points to the following information conveyed to State Farm on May 14, 2020, after the suit was filed:

> If that wasn't enough to put defendant on notice that the amount in controversy was over $75,000.00, on May 14, 2020, plaintiff provided defendant with a progress report prepared by plaintiff's treating physician Dr. Thomas Myers. **Exhibit O.** Dr. Myers outlines the future medical treatment that plaintiff will require and the cost of the treatments. Over the next five years, plaintiff's future medical cost for just the RFAs, ESIs, and office visits is $41,300.00. That does not include MRIs or physical therapy.[11]

Plaintiff argues State Farm's removal was untimely because it was facially apparent by no later than May 14, 2020 that the action was removable."[12] State Farm argues it did not become facially apparent the amount in controversy exceeds $75,000 until Plaintiff's deposition on September 20, 2020, and it timely removed the lawsuit within thirty days of this date.[13]

## LAW AND ANALYSIS

Federal district courts have subject matter jurisdiction under 28 U.S.C. § 1332 when diversity of citizenship exists and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."[14] A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction.[15] As applicable to cases alleging federal subject matter jurisdiction under § 1332, 28 U.S.C. § 1446(b) requires defendants remove such cases

---

[11] Id. at 5. Dr. Myers' progress report is R. Doc. 12-16.
[12] *Id.*
[13] R. Doc. 14 at 3.
[14] 28 U.S.C. § 1332.
[15] *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

within thirty days after the receipt by the defendant of a copy of the initial pleading from which it is "unequivocally clear and certain" that diversity of citizenship exists and the amount in controversy requirement is satisfied.[16] If it is not "unequivocally clear and certain" from the initial pleading that diversity of citizenship exists or the amount in controversy requirement is satisfied, the defendant may file a notice of removal within thirty days after receipt by the defendant of a copy of "an amended pleading, motion, order or other paper" from which it may first be ascertained that diversity of citizenship exists and the amount in controversy requirement is satisfied.[17] If removal is untimely, a case must be remanded to state court.[18]

The medical records, bills, and demand letters provided before suit was filed on January 8, 2020 did not trigger the thirty-day period for removal. In *Chapman v. Powermatic, Inc.*, the Fifth Circuit expressly rejected the contention that a pre-suit demand letter can constitute "other paper" for purposes of § 1446(b), even if the pre-suit demand letter estimates damages in excess of $75,000.[19] The Fifth Circuit explained:

> The plain language of the second paragraph of § 1446(b) requires that if an "other paper" is to start the thirty-day time period, a defendant must receive the "other paper" after receiving the initial pleading.[20]

Neither was the thirty-day period triggered in this case upon Plaintiff's filing his petition in state court because it was not facially apparent from the petition that the amount in controversy exceeded $75,000.[21]

---

[16] 28 U.S.C. § 1446(b); *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002) (stating that the thirty day time limit is triggered when the "pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.") (footnote omitted).
[17] 28 U.S.C. § 1446(b)(3).
[18] *Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759, 760 (5th Cir. 2000).
[19] *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992).
[20] *Id.*
[21] *See Bosky*, 288 F.3d at 210; *see also* R. Doc. 1-2.

State Farm argues its receipt of Dr. Myers' progress report on May 14, 2020, outlining future medical treatments and costs, did not trigger the thirty-day period because thereafter, on June 9, 2020, Plaintiff answered State Farm's written discovery requests and verified it was premature to determine whether the amount in controversy exceeded $75,000 and clarified that he was not making a lost wage claim.[22]

Dr. Myers' progress report revealed the Plaintiff had participated in physical therapy and undergone lumbar medial branch blocks, lumbar radiofrequency ablations, and lumbar injections.[23] Dr. Myers predicted Plaintiff would need follow up care, including radiofrequency ablations, physical therapy, and steroid injections, with regular MRI imaging, and possibly surgery.[24] It was unequivocally clear and certain from Dr. Myers' progress report that the amount in controversy requirement was satisfied. Because Defendant did not remove this action until October 26, 2020, more than six months after the period for removal was triggered, State Farm did not timely remove this action.

### CONCLUSION

Plaintiffs' Motion to Remand[25] is **GRANTED**. This case is remanded to the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana.

**New Orleans, Louisiana, this 4th day of January, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[22] R. Doc. 14 at 3.
[23] R. Doc. 12-16.
[24] *Id.*
[25] R. Doc. 12.